[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 902 
Ronald E. Gord was charged in a five-count indictment with the possession of cocaine, trafficking in cocaine (two counts), possession of marijuana, and possession of dihydrocodeine. The defendant was convicted of each count and sentenced to fifteen years' imprisonment in each count with the sentences to run concurrently. In addition, the defendant was fined $50,000 in each of the two counts charging trafficking and $1,000 in each of the three remaining counts. Four issues are raised on appeal.
 I
The stop and search of the defendant were proper and based upon probable cause.
Ricky Taylor informed Huntsville Police Officer Ralph Hardy that he had arranged to purchase some cocaine from the defendant. Officer Hardy had previously used Taylor as an informant and had obtained arrests based on Taylor's information.
On the afternoon of July 10, 1984, Taylor purchased 3.2 grams (.1 ounce) of cocaine from the defendant in the parking lot of the El Palacio Restaurant in Huntsville. Using a listening device he had installed in Taylor's pickup truck, Huntsville Police Office Paul Ballance monitored the sale. From an airplane, Huntsville Police Officer Randy Duck observed the defendant leave his residence and drive directly to El Palacio where the sale occurred.
On July 11, 1984, the next day, informant Taylor told Officer Hardy that the defendant had a large quantity of cocaine and that he could make arrangements to make another buy. Taylor telephoned the defendant and arranged a purchase for that afternoon.
The defendant's residence was placed under ground and air surveillance. As arranged, the defendant was stopped by the police before he arrived at El Palacio where the sale was to occur. He was frisked and "two clear plastic packages containing a white powder" were discovered in the defendant's boots. A plastic vial was found in the defendant's pocket. These three items contained 60 grams (2.1 ounces) of cocaine.
It is clear that this arrest was based upon a finding of probable cause. In his oral order denying the motion to suppress, the trial judge found:
 "In this particular case it appears that the officers in question did on July 10th conduct a controlled purchase of cocaine from the Defendant. That substance was analyzed and, according to Mrs. Odom, was found to be cocaine by a highly specific test. The next day the officers again go through the procedure to make another controlled purchase. The Defendant leaves from the same place, travels the same highway in the same truck. To me, it would seem that reasonable men under those circumstances would be justified in believing that an offense was being or about to be committed, that is, that the Defendant again possessed cocaine as he had done the previous day. So I find that the officers did have probable cause to act as they did and that your motion to suppress with respect to the stopping of the vehicle on July 11 is denied."
An officer has probable cause to make an arrest when, at the time the arrest is made, the facts and circumstances within his knowledge, and of which he has reasonably trustworthy information, are sufficient to lead a prudent person to believe that the *Page 903 
suspect is committing or has committed an offense. Beck v.Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142
(1964). An officer has probable cause to conduct a search if a reasonably prudent person, based on the facts and circumstances which the officer knows, would be justified in concluding that the items sought are connected with criminal activity and that they will be found in the place to be searched. Illinois v.Gates, 462 U.S. 213, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527
(1983).
The defendant argues that there was no probable cause for his arrest and the search of his person because the stop and search were made "only on the basis of information provided by the informant." The incompleteness of this contention renders it misleading. Officer Hardy testified that the order to stop and arrest the defendant was "based on the previous buy the day before and information from the informant that he was, you know, delivering a quantity of cocaine."
The police had reasonable cause to believe that the defendant had committed a felony on July 10th by selling cocaine to Ricky Taylor. This, in itself, gave them the authority to arrest the defendant without a warrant pursuant to Alabama Code 1975, §15-10-3. To argue that there was no probable cause for the defendant's arrest is to ignore the "practical, nontechnical conception" which is the "central teaching of our decisions bearing on the probable cause standard." Gates,103 S.Ct. at 2328.
Taylor's information that he was going to purchase cocaine from the defendant on July 12th cannot be isolated from the purchase of the preceding day. To do so ignores the totality-of-the-circumstances test that traditionally has informed probable cause determinations. Gates,103 S.Ct. at 2332. Gates held that the "veracity" or "reliability" element and the "basis of knowledge" element of Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v.United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
(1969), "are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, 103 S.Ct. at 2329. TheAguilar-Spinelli test has not been merely refined or qualified but specifically rejected. "We did not merely refine or qualify the `two-pronged test.' We rejected it as hypertechnical and divorced from `the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Massachusetts v. Upton, 466 U.S. 727,104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984). Probable cause may be established by a previously conducted "controlled buy". SeeUnited States v. Rodgers, 732 F.2d 625, 631 (8th Cir. 1984).
The defendant's arguments that no search for drugs was made of Taylor's truck before he purchased the cocaine from the defendant on July 10th, that no one heard Taylor's telephone conversation with the defendant arranging the second purchase on July 11th, and that "(t)he whole situation may have been a `setup' by the informant to silence the Defendant, who was working `with the FBI,' in order to get `the heat' off him," are factors that we have considered in making our probable cause determination. The fact that Taylor's truck was not searched, as was his person, before he purchased the cocaine from the defendant, and the fact that no police officer overheard the telephone conversation arranging the second sale may indicate some laxity in police procedure, but those omissions certainly do not destroy the informant's credibility or reliability.
There is no evidence in the record that Taylor, the informant, was under arrest or facing charges or possible charges in the future at the time of the events under review. There is no evidence that the police were "putting the heat" on him for any reason. *Page 904 
At his sentencing hearing, the defendant did state that he had been working with the FBI for the last two and one-half years and that in July of 1983 he was "the only source of information" for a "bust of 560 pounds of pure cocaine." There was no evidence to support or verify this statement. We find nothing but speculation to support the contention that the defendant was framed.
 II
The defendant argues that there was no probable cause to support the warrant authorizing the search of his residence.
After the defendant's arrest, Officer Hardy obtained a search warrant for the defendant's residence. His affidavit is as follows:
 "I further depose and say that the reasons for my belief that the above information is reliable and for my belief in the reliability of the aforenamed informer are as follows: It is common knowledge that Ronnie Gord is suspected to be involved in drug traffic. This knowledge is based on the fact that there have been numerous drug buys made by informants working with the Huntsville Police Dept. Recently there have been numerous annonymous complaints received by the Huntsville Police Dept. via telephone stating that said Ronnie Gord is selling large quantities of cocaine. Within the past twenty four hours a confidential and reliable informant purchased a quantity of cocaine from said Ronnie Gord. Said informant has provided information in the past that has led to the seizure of drugs and arrests on several occasions. Within the past twenty four hours said informant arranged to purchase a quantity of cocaine from Ronnie Gord. Officers of the Huntsville Police Department set up a surveillance at the residence of Ronnie Gord and observed said Ronnie Gord leave his residence and go directly to meet the informant without making any stops. Ronnie Gord met said informant and purchased a quantity of cocaine. This date said informant advised that Ronnie Gord would be leaving his house located at 12285 North Parkway driving south to a location in Huntsville carrying a quantity of cocaine which he was to deliver to a potential buyer. Surveillance was again set up on the residence of Ronnie Gord by members of the Huntsville Police Dept. Ronnie Gord was observed to leave his residence at 12285 North Parkway, Huntsville, Madison County, Alabama and drive south on the Parkway. Said Ronnie Gord was stopped by members of the Huntsville Police Dept. shortly after he left his residence and before he stopped at any other location. Based on the information provided by the confidential reliable informant Ronnie Gord's person and vehicle was searched. Officers seized a quantity of white powder believed to be cocaine and several hypodermic syringes containing a clear liquid and a yellow liquid. Based on the information provided by the informant and information obtained through surveillance and the arrest of Ronnie Gord I have reason to believe and do believe that illegal drugs are being concealed in the residence of said Ronnie Gord."
The search warrant was executed on July 11th. In the defendant's residence were found 3.6 grams (13/100ths of an ounce) of marijuana, dihydrocodeine, and 226.24 grams (8 ounces) of cocaine.
By dissecting each individual allegation of the affidavit, the defendant argues that there are insufficient facts upon which to base a finding of probable cause. In so doing, he falls prey to the criticism advanced against theAguilar-Spinelli test: "Unlike a totality of the circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the `two-pronged test' has encouraged an excessively technical dissection of informant's tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate." Gates, 103 S.Ct. at 2330. *Page 905 
In upholding the search warrant, the trial judge found:
 "In this case it appears that the Defendant on both occasions left his residence. He made no stops in between. He was involved in the possession of drugs. I think that there is sufficient evidence to warrant the issuance of the search warrant in this case."
Although it is true that the affidavit contains no allegation that the informant told Officer Hardy that drugs were in the defendant's house, this flaw is not fatal to the warrant's validity.
Here, there was a sufficient nexus between the criminal activity, the things to be seized, and the place to be searched.
 "[T]he facts supporting the warrant must show probable cause to believe that the criminal objects are presently in the place to be searched, Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968), and `it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence.' United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970).
 "But it is also clear that interpreting a search warrant in the proper `common-sense and realistic fashion,' United States v. Ventresca, supra, 380 U.S. [102] at 108, 85 S.Ct. 741, [745, 13 L.Ed.2d 684] may result in the inference of probable cause to believe that criminal objects are located in a particular place to which they have not been tied by direct evidence." United States v. Velenzuela, 596 F.2d 824, 828 (9th Cir.), cert. denied sub nom. Lizarraga v. United States, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979).
From the information contained in the affidavit, it was a reasonable inference that cocaine would be found in the defendant's residence. See Moore v. State, 441 So.2d 1003,1004-06 (Ala.Cr.App. 1983), cert. denied, ___ U.S. ___,104 S.Ct. 1711, 80 L.Ed.2d 183 (1984); State v. Witwer,642 P.2d 828, 831-32 (Alaska App. 1982); State v. Yaritz, 287 N.W.2d 13,15 (Minn. 1979). "[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982).
 "Controlled substances are of considerable value on the street, much sought after by users, and, unless kept in a safe place, subject to theft. Wide experience over the years has demonstrated that such items are usually kept in a dealer's place of residence and under constant surveillance or supervision. The defendant was obviously a dealer. He had `pounds' of marijuana. Such a quantity would not be carried on his person or left unprotected in an automobile. Where then does logic and common sense dictate that it would be kept? There is only one answer, his residence." State v. Bernth, 196 Neb. 813, 246 N.W.2d 600, 602 (1976), cert. denied, 430 U.S. 948 [97 S.Ct. 1587, 51 L.Ed.2d 797] (1977).
See W. LaFave, 1 Search And Seizure § 3.7 (d) (1978).
In assessing the adequacy of a search warrant affidavit, "[t]he focus of judicial inquiry should not be upon a `grading of the paper' of the affiant, but rather, should be based upon whether the constitutional rights of the party subject to the search will be violated if the warrant is issued." UnitedStates v. Sorrells, 714 F.2d 1522, 1528 (11th Cir. 1983). Under the guidelines established in Gates, we find no violation of the Fourth Amendment rights of the defendant.
 III
The third and fourth issues raised by the defendant are related and equally without merit. In Lyons v. State,455 So.2d 295, 297 (Ala.Cr.App. 1984), this Court held that the trafficking in cocaine statute specifically provides that any person who possesses "28 grams or more of cocaine or of anymixture containing cocaine" is guilty of *Page 906 
trafficking in cocaine. Alabama Code 1975, § 20-2-80 (2) (emphasis added). "Under this statute, the State is not required to prove that the accused possessed 28 grams or more of pure cocaine." Lyons, 455 So.2d at 297. No sound argument has been advanced as to why our holding in Lyons should be reversed and the clear intent of the legislature be misconstrued.
 IV
At trial, defense counsel established through his cross examination of the State's forensic drug chemist, Martha Odom, that there was never any determination made of the percent of pure cocaine found in the substances seized. Mrs. Odom, at one point, replied, "It's possible that it can be done, but there was no need. So I did not do it."
Appellate counsel argues that trial counsel was obviously unaware of this Court's decision in Lyons and was therefore incompetent in attempting to prove that the State did not show that the defendant possessed more than 28 grams of pure cocaine. This argument is merely indicative of the "virtual flood" of criticisms and complaints directed against the criminal trial lawyer. See Ex parte Boatwright, 471 So.2d 1257
(Ala. 1985) (J. Maddox concurring). It appears that no matter how diligent and effective defense counsel is, he will be viewed as ineffective on appeal. Without further consideration, we reject this contention with the comment that, if trial counsel had not adopted this tactic, he would probably have also been criticized by appellate counsel who urges this Court to reverse our decision in Lyons and require the State to prove that the accused possessed 28 grams or more of pure cocaine.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.