**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Brenda Faye BURKE,
Defendant-Appellee.**

**No. 85–8515.**

United States Court of Appeals,
Eleventh Circuit.

March 18, 1986.

Rehearing and Rehearing En Banc
Denied April 23, 1986.

---

Richard H. Deane, Asst. U.S. Atty., Larry D. Thompson, U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

John O. Ellis, Jr., Federal Defender Program, Inc., Atlanta, Ga., for defendant-appellee.

---

* Honorable Anthony A. Alaimo, Chief U.S. District Judge for the Southern District of Georgia,

Before JOHNSON and HATCHETT, Circuit Judges, and ALAIMO *, Chief District Judge.

JOHNSON, Circuit Judge:

The present case requires us to decide whether the search of the apartment of defendant-appellee Brenda Burke was conducted in violation of her rights under the Fourth Amendment.

On July 13, 1984, FBI Agent John Benesh executed an affidavit in support of two search warrants. The affidavit was based on information from a confidential informant who had given reliable information on several occasions in the past. Included in the affidavit was the statement that an envelope containing stolen payroll checks could be found in the apartment of "Brenda," last name unknown, a woman who was a "fence" for local thieves and kept stolen property in her apartment. The affidavit also stated that a woman known as "Kojak" had displayed numerous checks to the informant and had said that she had other papers in her apartment.

The confidential informant told Benesh that Brenda and Kojak both lived in Atlanta, Georgia, at "38 Throop Street, apartment 840," and at "24 Throop Street, apartment 854," respectively. Before submitting the affidavit in support of the search warrant, Benesh accompanied the informant to appellee's apartment complex; the informant pointed out the building and apartment belonging to appellee. Benesh did not observe a building number, but he did observe the number "840" on the apartment door.

In describing the location of appellee's apartment, the affidavit in support of the search warrants stated:

38 Throop Street, is a two-story red brick building, trimmed in a reddish-brown paint with a shingled roof and three adjacent apartments, with apartment 840 being the far left apartment at that address looking at it from the front.

sitting by designation.

On the strength of the affidavit, a magistrate issued two search warrants. The present case concerns the warrant that was supposed to authorize a search of Brenda Burke's apartment. That warrant authorized a search of the premises located at "38 Throop Street, being a two-story red brick building, trimmed in a reddish-brown paint with a shingled roof and three adjacent apartments, with apartment 840 being the far left apartment at that address looking at it from the front." In fact, Brenda Burke resided in the Carver Homes Housing Project at 48 Troup Street, apartment 840, Atlanta, Georgia.

On July 13, 1984, two search teams comprised of FBI agents and local police officers assembled for the purpose of searching the two apartments for which search warrants had been issued. Agent Benesh was in the team that was to search Kojak's apartment; FBI Agent Michael Smith headed the team assigned to search appellee's apartment. Before going to the apartments, in a meeting of the agents in the parking lot outside Carver Homes, Benesh told Smith that Benesh had previously been to appellee's apartment. As the two teams drove past appellee's apartment building at 48 Troup Street, Benesh advised Smith by radio which building was the one in which appellee lived. During all discussions prior to the search, the agents had referred to "Troup Street," not "Throop Street."

Smith's team searched apartment 840 at 48 Troup Street. In the course of the search, the team found a gun. When asked if the gun belonged to her, Brenda Burke said that it did. Brenda Burke had previously been convicted of a felony. Consequently, on November 6, 1984, appellee was charged in a one-count indictment with unlawful possession of a firearm, in violation of 18 U.S.C.A.App. § 1202(a)(1).

Following her indictment, appellee moved to suppress the firearm, as well as her statement that the gun belonged to her. A magistrate recommended that the motion to suppress be denied. The district court followed this recommendation with respect to the statement; however, the court re-jected the recommendation with respect to the firearm and granted the motion to suppress, 613 F.Supp. 576. The Government filed a motion to reconsider the court's order suppressing the firearm, which motion was denied. The Government filed a timely notice of appeal.

 A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority. An erroneous description of premises to be searched does not necessarily render a warrant invalid. The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may " 'with reasonable effort ascertain and identify the place intended.' " *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir.1985) (citations omitted).

 Although the search warrant named "Throop Street," there is no such street in Atlanta, and the only street in Atlanta with a name closely resembling that name is Troup Street. On Troup Street, although there was no residence numbered "38," the buildings in the close vicinity of the one in which appellee resided were numbered "36," "42," "48," and "52." The search warrant contained a detailed physical description of the building, minimizing the possibility that an apartment in any building other than the correct one would be searched. *See United States v. Figueroa*, 720 F.2d 1239, 1243 n. 5 (11th Cir.1983) (mistaken address "inconsequential in light of a clear description of the name of the building and its physical appearance"). In addition, the warrant correctly named the apartment number, and there was only one apartment with the number "840" in the Carver Homes Housing Project in which appellee resided.

In evaluating the effect of a wrong address on the sufficiency of a warrant, this Court has also taken into account the

knowledge of the officer executing the warrant, even where such knowledge was not reflected in the warrant or in the affidavit supporting the warrant. In *United States v. Weinstein, supra,* where a search warrant failed to specify correctly the entrance leading to the premises to be searched, we considered it significant that the agent conducting the search had been to the premises before and that he had no doubt which door gave access to the correct premises. *Id.* at 1532–33. In the present case, Agent Benesh knew precisely which premises were to be searched. Although Benesh did not himself execute the warrant, he pointed out the correct apartment to the executing officer, Smith. The actions of Benesh and Smith insured that there was no possibility the wrong premises would be searched.

We hold that, under these circumstances, the search warrant described the premises to be searched with sufficient particularity to direct the officers to the correct apartment, to confine the officers' examination to that apartment, and to place the occupants on sufficient notice of the officers' authority to search the premises. The warrant therefore satisfied the particularity requirements of the Fourth Amendment.

Because we hold that the search warrant did not violate appellee's rights under the Fourth Amendment, we do not decide whether the evidence seized would otherwise have been admissible under the "good faith exception" to the exclusionary rule. The order of the district court granting appellee's motion to suppress is REVERSED, and this case is REMANDED for further proceedings not inconsistent with this opinion.