Frederick Wayne Helton was convicted for the possession of lysergic acid diethylamide (L.S.D.), and was sentenced to six years' imprisonment, fined $5,000, and ordered to pay $25 to the Victim's Compensation Fund. Three issues are raised on this appeal from that conviction.
Mobile Police Officer Cesar Perez testified that, on May 18, 1987, he and a confidential informant conducted a "controlled buy" at the defendant's residence. Officer Perez observed the informant entering a residence on Center Drive and met with the informant directly after his exit therefrom. The informant then handed Perez a "blotter stamp" of L.S.D. and told him that he had purchased the stamp from a white male known to him only as "Wayne". On May 19, Officer Perez obtained a warrant to search the defendant's residence.
On May 20, 1987, surveillance of Helton's residence was established. The defendant was seen leaving the premises in a white station wagon. As planned, the defendant was allowed to drive away from the residence but was stopped by a marked police car a few blocks from his house. Helton was asked to get out of his vehicle and to produce some identification. He complied with these requests. Upon receiving the defendant's identification, the police informed him that they had a search warrant for his residence. The defendant was then handcuffed, placed in the patrol car and transported back to his residence.
The officers obtained the defendant's door key and entered the house in order to execute the search warrant. Various controlled substances and drug paraphernalia were found in the residence.
 I
The defendant contends that the description of the location of the residence contained in the search warrant was constitutionally deficient. He asserts that since *Page 590 
the warrant contained the wrong public way designation it did not describe the place to be searched with sufficient particularity to satisfy the Fourth Amendment.
The search warrant described the premises to be searched as a "Yellow, Tan house with brown trimming surrounded by burglar bars, located on Center Street, approximately 2/10's of a mile South of Old Shell Road, first house on the right facing Center Street off Old Shell."
The description of the house was correct in all respects except that the house was located on Center Drive and not Center Street.
The circuit court properly denied the defendant's motion to suppress the incriminating evidence found as a result of the execution of the search warrant.
 "A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority. An erroneous description of premises to be searched does not necessarily render a warrant invalid. The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may ' "with reasonable effort ascertain and identify the place intended." ' United States v. Weinstein, 762 F.2d 1522, 1532
(11th Cir. 1985) (citations omitted)." United States v. Burke, 784 F.2d 1090, 1092 (11th Cir. 1986), cert. denied, 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986).
The test for determining the sufficiency of the description of the place to be searched is set out in Lyons v. Robinson,783 F.2d 737, 738 (8th Cir. 1985):
 "The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched. United States v. Gitcho, 601 F.2d 369, 371 (8th Cir.) (citations omitted), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Thus, where a search warrant contain[s] information that particularly identified the place to be searched, [many courts have] found the description to be sufficient even though it listed the wrong address. United States v. McCain, 677 F.2d 657, 660-61 (8th Cir. 1982)."
In the instant case, the warrant listed the residence to be searched as located on "Center Street," whereas the residence was actually located on Center Drive. However, it is clear that the error in the warrant was not misleading or confusing.
 "In evaluating the effect of a wrong address on the sufficiency of a warrant, this Court has also taken into account the knowledge of the officer executing the warrant, even where such knowledge was not reflected in the warrant or in the affidavit supporting the warrant. In United States v. Weinstein, [762 F.2d 1522], where a search warrant failed to specify correctly the entrance leading to the premises to be searched, we considered it significant that the agent conducting the search had been to the premises before and that he had no doubt which door gave access to the correct premises. Id. at 1532-33." Burke, 784 F.2d at 1092-1093.
In United States v. Turner, 770 F.2d 1508, 1511 (9th Cir. 1985), cert. denied, 475 U.S. 1026, 106 S.Ct. 1224,89 L.Ed.2d 334 (1986), the court observed: "In the case at bar, the warrant description was sufficiently particular. The verbal description contained in the warrant described the house to be searched with great particularity; the address in the warrant was reasonable for the location intended; the house had been under surveillance before the warrant was sought; the warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were intended to be *Page 591 
searched; [instructions on how to reach the property by car delineated both adjacent roads and mileage]; and the premises that were intended to be searched were those actually searched. Under these circumstances, there was virtually no chance that the executing officer would have any trouble locating and identifying the premises to be searched, or that he would mistakenly search another house." See also Burke,784 F.2d at 1093.
Under these circumstances, we find that the warrant satisfied the particularity requirements of the Fourth Amendment and that the defendant's motion to suppress was properly denied.
 II
The defendant contends that his arrest was illegal, and that the statement he made during the search should have been suppressed because it was "fruit of the official illegality."
On the evening of May 18, 1987, Officer Perez and a confidential informant made a "controlled buy" of L.S.D. at a residence located on Center Drive. Officer Perez was unable to identify the person who conducted the sale but he was given a description of that person by the informant. The informant also told Officer Perez that the seller was known to him as "Wayne." Based on his own observations and the information he received from the informant, Officer Perez obtained a search warrant for the residence where the sale of illegal drugs had taken place.
On May 20, the defendant's residence was placed under surveillance. Officer Perez was a member of the surveillance team when he observed a man leaving the residence. This man matched the informant's description of the person from whom the informant had purchased the L.S.D. on May 18. As arranged, the defendant was stopped by police after he had driven a few blocks from his residence. Officer Perez testified that the defendant was detained in this manner because the informant had stated that the defendant had made the comment that "the police would never get to him, [because] the house was surrounded by burglar bars and . . . if [the police] would try to make a forced entry into the residence, any evidence that [was] in the house would be destroyed before [the police] gained entry into the residence."
After the defendant was stopped by the marked patrol car, he was asked to produce some identification and was then informed that the police had a search warrant for his residence. The defendant was then handcuffed, placed in the patrol car, and transported to his residence.
The defendant argues that this stop and arrest were not based upon probable cause. We disagree.
 "An officer has probable cause to make an arrest when, at the time the arrest is made, the facts and circumstances within his knowledge, and of which he has reasonably trustworthy information, are sufficient to lead a prudent person to believe that the suspect is committing or has committed an offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)." Gord v. State, 475 So.2d 900, 902-903 (Ala.Cr.App. 1985); see also United States v. Taylor, 797 F.2d 1563, 1564 (11th Cir. 1986).
The record reveals that the order to stop and arrest the defendant was predicated on the previous controlled purchase of L.S.D. and information received from the confidential informant. This Court has held that "[p]robable cause may be established by a previously conducted 'controlled buy.' "Gord, 475 So.2d at 903.
In the instant case, the police had reasonable cause to believe that the defendant had committed a felony on May 18, 1987, by selling L.S.D. to a confidential informant. "This, in itself, gave them the authority to arrest the defendant without a warrant pursuant to Alabama Code 1975, § 15-10-3." Id. This Code section provides in pertinent part that:
 "An officer may arrest any person without a warrant, on any day, and at any time. . . .
 "(3) When a felony has been committed and he has reasonable cause to believe *Page 592 
that the person arrested committed it. . . ."
In the present case, a felony had been committed and the arresting officer had reasonable cause to believe that the person arrested committed that offense. Therefore, the arrest was legal and any statement made by the defendant after such arrest was admissible into evidence.
 III
The defendant argues that the State's evidence is insufficient to support his conviction. However, we find that the circumstantial evidence presented by the State is more than adequate to prove his guilt beyond a reasonable doubt.
On May 18, 1987, Officer Cesar Perez and a confidential informant conducted a controlled purchase of L.S.D. at a residence on Center Drive. The informant described the seller's appearance to Perez and told the officer that he knew him as "Wayne." On May 19, Officer Perez prepared a search affidavit. The affidavit was predicated upon Perez's own observations and on information he had received from the confidential informant. On the strength of the affidavit, a search warrant was issued.
On May 20, the defendant's residence was placed under surveillance by Mobile Police Officers Cesar Perez and Rufus Brown. Officer Perez observed the defendant leaving the premises in a white station wagon. After the defendant had driven a few blocks, he was stopped by a marked patrol car. He was asked to get out of the car and show the officers some identification. The defendant complied with these requests. The officers informed him that they had a search warrant for his residence. He was then handcuffed, put in the rear of the patrol car and driven to his residence. The officers obtained Helton's house key from his person and entered the residence in order to execute the search warrant. During the search, the officers discovered a considerable amount of L.S.D., other controlled substances, and drug paraphernalia. Mail addressed to the defendant at both 108 Center Drive and 108 Center Street was also found inside the residence. During the search, one of the officers discovered that a blue vase contained contraband. When the officer brought this vase to Officer Perez, the defendant, who was sitting nearby, said, "Oh, shit!"
The defendant asserts that the evidence was not sufficient to support a finding that he had possession of the contraband. He argues that the illegal substances could have been placed in the house by an individual who had once lived with him. This contention does not absolve the defendant of criminal liability because "the possession of illegal drugs is susceptible of joint commission." Mitchell v. State, 395 So.2d 124, 126
(Ala.Cr.App. 1980), cert. denied, Ex parte Mitchell,395 So.2d 127 (Ala. 1981). Furthermore, a reasonable inference which could have been drawn from the State's evidence was that the defendant was, and had been for several months prior to the search, the sole occupant of the residence.
In White v. State, 546 So.2d 1014 (Ala.Cr.App. 1989), this Court set out the standards for reviewing a conviction based on circumstantial evidence. We believe that the evidence produced by the State, when viewed in a light most favorable to the prosecution, was sufficient to allow the trial judge to reasonably conclude that the evidence excluded every reasonable hypothesis except that of guilt.
 "Actual physical personal possession of contraband is not required and possession may be constructive as well as actual. Hancock v. State, 368 So.2d 581
(Ala.Cr.App.), cert. denied, Ex parte Hancock, 368 So.2d 587 (Ala. 1979). However, where constructive possession of contraband is relied upon, it is necessary to show guilty knowledge. This knowledge may be shown by circumstantial evidence. Blaine v. State, 366 So.2d 353 (Ala.Cr.App. 1978); Henderson v. State, 347 So.2d 540 (Ala.Cr.App. 1977).
 ". . . [W]here drugs are found on premises under the control of the defendant an inference may arise that the defendant had knowledge and possession of them. 28 C.J.S. Drugs and Narcotics Supplement, Section 210 (1974)." Mitchell v. State, 395 So.2d 124, 126 *Page 593 
(Ala.Cr.App. 1980), cert. denied, Ex parte Mitchell, 395 So.2d 127 (Ala. 1981).
The record in the instant case reveals that controlled substances were found in the bedroom among the defendant's personal belongings. A large zip lock bag containing 403 L.S.D. "blotter stamps" was found in the bedroom in a musical equipment folder. The defendant was a member of the band Target. A brown bottle containing 96 L.S.D. tablets was found in plain view on top of the dresser. A blue vase containing contraband and a perforated piece of paper (a "stamp") was also discovered in the bedroom. When the defendant realized that the police officers had found the vase, he said "Oh, shit." From this statement, the trier of fact could reasonably infer the defendant's consciousness of guilt. "Once it is established that the defendant resided in the house, his connection with the drugs is supplied by the quantity and location of the drugs throughout the house." Mitchell, 395 So.2d at 126.
In the case now before us, the drugs were so situated throughout the only bedroom in the house that it would be reasonable to conclude that the lone occupant of the dwelling would have knowledge of their presence. In weighing the evidence, "courts and juries must use common sense, common reason, and common observation as well as a common knowledge of the usual acts of men and women under given circumstances."Thompson v. State, 21 Ala. App. 498, 499, 109 So. 557 (1926).
 "Here, the inference of knowledge and control, on the basis of human experience and with the application of common sense, is a probable and natural explanation of the facts proven, and logically flows from those facts. See 29 Am.Jur.2d Evidence Section 162 (1967). 'It is a logical and reasonable deduction from the evidence and is not supposition or conjecture.' Thomas v. State, 363 So.2d 1020, 1022 (Ala.Cr.App. 1978) . ..
 "The trier of fact is 'under a duty to draw whatever permissible inferences it may from circumstantial evidence and to base its verdict on whatever permissible inferences it chooses to draw.' Gullatt v. State, 409 So.2d 466, 472
(Ala.Cr.App. 1981)." Roberts v. State, 451 So.2d 422, 425 (Ala.Cr.App. 1984).
Here, there was legal evidence from which the factfinder could have, by fair inference, found the accused guilty. Consequently, this Court will not overturn the rial judge's finding. See Eady v. State, 495 So.2d 1161, 1164 (Ala.Cr.App. 1986).
The judgment of the circuit court is due o be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.