I concur with the main opinion. I write, however, to explain certain considerations that lead me to that decision. First, the affidavit of Officer Bemis references three "undercover buys" of cocaine from Perry by Bemis on October 27, October 31, and November 4, 1997. It does not reference the fourth controlled buy by Bemis from Perry on November 5, 1997, wherein Perry again sold Bemis a quantity of cocaine, and was arrested at that point. Including in the affidavit information relating to this fourth sale would certainly have "shored up" the inference the State asks us to draw from the affidavit — that there was probable cause to believe Perry was obtaining the cocaine from his residence. A more important omission from the affidavit, however, is the omission of an item of information the State nonetheless proffers at page 10 of its brief: "In each case [of the controlled drug buys made from Perry], the drug sale was made within a short *Page 844 
time from the call of the undercover agent requesting the drugs." That information is simply not included within the affidavit. Also, the affidavit contains no information as to whether the calls of the undercover agent were made to Perry at a telephone number registered for the residence. If such information had been included in the affidavit, then the facts of this case would have been close enough to the facts ofGord v. State, 475 So.2d 900 (Ala.Crim.App. 1985), to persuade me to vote to uphold the search. Of course, it may well have been that Perry received his telephone calls on "a mobile" phone, in which event his location at the time he received a call from the undercover agent would not have been indicated. We do not have before us telephone records from which we might resolve these unknowns, and they are not resolved by the materials that are before us. Officer Bemis's statements do not fit within the observations made in United States v. Lockett, 674 F.2d 843
(11th Cir. 1982), cited in Gord, 475 So.2d at 905, concerning the fact that controlled substances "are usually kept in a dealer's place of residence and under constant surveillance or supervision"; Officer Bemis stated in his affidavit that drug dealers use neutral locations to consummate the transactions, "in order to divert [suspicion] from their residence and/or `stash house,' where they store the illegal drug." (Emphasis supplied.) Nothing in the affidavit serves to discriminate between the possibility that Perry was retrieving drugs from a "stash house" and the possibility that he was retrieving them from his residence.