DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**RAY TREMAINE BENNETT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-3148

[October 29, 2014]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Gary L. Sweet, Judge; L.T. Case No. 562011CF003643A.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Monique Rolla, Assistant Attorney General, West Palm Beach, for appellee.

*ON MOTION FOR REHEARING*

PER CURIAM.

We grant the motion for rehearing, withdraw our prior opinion, and substitute the following opinion in its place.

Ray Tremaine Bennett appeals an order denying his motion to suppress evidence seized pursuant to a search warrant. He argues the warrant was invalid because the description of the place to be searched contained an incorrect address. Finding the warrant description was sufficient to allow the officers executing it to find the correct premises, when properly aided by an officer who had previously surveilled the premises, we affirm.

Appellant was charged with possession of a firearm or ammunition by a convicted felon and possession of cannabis. These items were seized in a search of his home, conducted pursuant to a search warrant. The warrant described the premises to be searched as follows:

100 Brooks Street, building Q, apartment 302, Ft. Pierce, Florida, in Saint Lucie County, known and described as follows,

To-wit: from the intersection of Okeechobee Road and McNeil Road, proceed north on McNeil Road to Brooks Street. Travel east on Brooks Street to Petals Road. Travel east on Petals Road to building Q. The building is located on the north side of the road. The building is a three-story CBS multifamily structure. The structure/building is beige/tan in color. The roof of the structure/building is pitched and red in color. Posted on the southwest side of the structure/building is the letter "Q" and below the numbers "100-314". Posted on the front door of the residence are the numbers "302"; . . . .

At the evidentiary hearing on appellant's motion to suppress, it was established that the warrant's description of the premises to be searched was inaccurate in several ways. Appellant's apartment was numbered 302 and was located in Building Q of the apartment complex, but the building's address was 302 Petals Road, not 100 Brooks Street. The directions in the warrant, from the intersection of Okeechobee Road and McNeil Road, are also impossible to literally follow.

There was only one Building Q in the apartment complex and only one Apartment 302 in that building. There was an apartment building in the same complex on Brooks Street, but it was labeled Building F. Both Building F and Q, like all the buildings in the complex, were three-story, beige buildings with pitched red roofs.

Nevertheless, officers executing the search warrant searched the correct apartment in Building Q at 302 Petals Road. The officer who applied for the warrant, and who had surveilled the premises during a controlled drug buy, accompanied them and directed them to the correct apartment. One of the executing officers admitted that he never actually tried to follow the directions in the warrant.

Appellant argued the warrant's description of the premises to be searched was insufficient because an officer without independent knowledge would not have been able to find the correct apartment. The state responded that the description was sufficient, because it allowed the officer who had previously surveilled the apartment to lead the officers executing the warrant to the correct premises. The state also argued that, because there was only one Building Q in the apartment complex, the directions would have allowed an executing officer to find the correct

2

premises.

The trial court denied the motion to suppress. Although the court agreed that the directions were "nonsensical," it found the executing officers had properly relied on the knowledge of the officer who had previously surveilled the premises. The court also found that an officer attempting to follow the erroneous directions could have asked a local resident for the location of Building Q and, since there was only one in the complex, could have found the correct premises.

Following this denial, appellant pled guilty to the charges but reserved his right to appeal this dispositive issue. *See* Fla. R. App. P. 9.140(b)(2)(A)(i). "The standard of review for motions to suppress is that the appellate court affords a presumption of correctness to the trial court[']s findings of fact but reviews de novo the mixed questions of law and fact that arise in the application of the historical facts to the protections of the Fourth Amendment." *Wyche v. State*, 987 So. 2d 23, 25 (Fla. 2008) (footnote omitted).

Under the Fourth Amendment of the United States Constitution and Article I, Section 12 of the Florida Constitution, a warrant must particularly describe the place or places to be searched. Historically, the purpose of this requirement was to prevent the use of general warrants and wide-ranging exploratory searches. *See State v. Leveque*, 530 So. 2d 512, 513 (Fla. 4th DCA 1988); *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

> [I]t is a sufficient designation of the place to be searched if the officer to whom the warrant is directed is enabled to locate the same definitely and with certainty. This does not necessarily require the true legal description to be given in the form it appears on the records of the deed register. Any designation or description known to the locality that points out the place to the exclusion of all others, and on inquiry leads the officer unerringly to it, satisfies the constitutional requirement.

*Jackson v. State*, 87 Fla. 262, 267 (1924). In other words, "[a] warrant is sufficient if the description is such that the officer can, with a reasonable effort, ascertain and identify the intended location for the search." *Leveque*, 530 So. 2d at 513. "The test is one of practical accuracy, not technical nicety." *Clapsaddle v. State*, 545 So. 2d 946, 947 (Fla. 2d DCA 1989).

Appellant and the state disagree as to whether officers executing a search warrant can rely on another officer's independent knowledge of the premises to cure defects in an ambiguous search warrant. The trial court determined such assistance was appropriate, based on *Smith v. State*, 182 So. 2d 461 (Fla. 2d DCA 1966). In *Smith*, "[t]he warrant gave authority to search a dwelling located at 306 Water, Plant City, Hillsborough County, Florida," and Smith "lived at 306 *South* Water *Street*, Plant City." *Id.* at 463 (emphasis added). The Second District held the description was "sufficient where the searching officer had kept the house under surveillance the previous evening and could locate it as described with certainty." *Id.* at 463.

Appellant relies on *Shedd v. State*, 358 So. 2d 1117 (Fla. 1st DCA 1978), where the search warrant contained an incorrect street address and an inaccurate physical description of the house to be searched. *Id.* at 1118. The house, however, was under surveillance. *Id.* After obtaining the warrant, the officers "went directly to Shedd's home . . . and paid no attention to the address given in the warrant . . . . They relied on their independent knowledge of Shedd's home." *Id.* The First District reversed the denial of Shedd's motion to suppress, reasoning:

> Search warrants are to be strictly construed. The authority to search is limited to the place described in the warrant. This does not include additional or different places. . . . A search of a citizen's residence must be based on the description set forth in the warrant and not left to the discretion of an officer. In the case before us, *an officer without independent knowledge would have searched an incorrect residence.* This can and must be avoided.

*Id.* (emphasis added). *Shedd* distinguished *Smith* as involving a minor defect in the warrant's description that did not affect the officers' ability to locate the house. *Shedd*, 358 So. 2d at 1119.

In a subsequent case, *Carr v. State*, 529 So. 2d 805 (Fla. 1st DCA 1988), the First District appeared to recede from *Shedd*, concluding that "a prior or continuing surveillance of the premises may be considered in connection with the warrant description of the place to be searched." *Id.* at 806. *Carr* upheld a warrant listing the wrong apartment number where

> the warrant contained detailed directions to the small apartment building in which appellant resided and described the apartment to be searched as the one occupied by appellant and another named individual. The *officers were aware of appellant's*

4

*residence through their surveillance of the premises, and were able with reasonable effort to identify the place to be searched in accordance with the warrant description.* In the circumstances presented the inaccuracy in the warrant with regard to the apartment number did not place the officers in doubt as to the premises to be searched and does not invalidate the warrant.

*Id.* at 807 (emphasis added).

*Carr* is in line with federal case law on this issue. *See, e.g., United States v. Harbison*, 523 Fed. Appx. 569, 573-74 (11th Cir. 2013) (despite incorrect address, "the physical description of the target residence, as well as law enforcement's familiarity with the property based on surveillance, puts to rest [appellant's] contention that the officers did not have sufficiently particular information"); *United States v. Burke*, 784 F.2d 1090, 1092-93 (11th Cir. 1986) ("In evaluating the effect of a wrong address on the sufficiency of a warrant, this Court has also taken into account the knowledge of the officer executing the warrant, even where such knowledge was not reflected in the warrant or in the affidavit supporting the warrant . . . ."). *But see United States v. Williamson*, 1 F.3d 1134, 1136 (10th Cir. 1993) (noting that, "[a]lthough an executing officer's knowledge may be a curing factor" it cannot be "the *sole* source of information identifying the physical location of the" premises to be searched). As there does not appear to be any United States Supreme Court precedent directly on point, this federal case law is not binding on this court. *See* Art. I, § 12, Fla. Const. ("This right shall be construed in conformity with the 4th Amendment to the United States Constitution, *as interpreted by the United States Supreme Court.*") (emphasis added); *State v. Rabb*, 920 So. 2d 1175, 1182 (Fla. 4th DCA 2006) ("Article I, Section 12 of the Florida Constitution does not prevent this Court from granting heightened protection in the absence of United States Supreme Court precedent directly on point to the contrary."). Nevertheless, these cases are persuasive.

We hold that independent knowledge of the premises by an officer executing a search warrant, where that knowledge was obtained from prior surveillance of the premises, may be considered in assessing whether the warrant's description of the premises is sufficiently particular. *See Carr*, 529 So. 2d at 806-07; *Burke*, 784 F.2d at 1092-93. This principle has limits, grounded in the need to protect the public from general searches or seizures by officers with unfettered discretion. *See Leveque*, 530 So. 2d at 513; *Garrison*, 480 U.S. at 84. If the warrant's description is so manifestly defective that the executing officer's independent knowledge is essentially the only way the executing officers could have found the property, the

warrant description is not sufficiently particular. *See Williamson*, 1 F.3d at 1136.

Here, the warrant's description is not so manifestly deficient. The description was correct as to the letter of the building and the apartment number. Moreover, there was only one Building Q in the apartment complex.

The description at issue in *Shedd* was far more inaccurate than the description in this case. There, the warrant description read:

> A house located at 5738 Blanding Boulevard, Jacksonville, Duval County, Florida, more particularly described as follows. The location to be searched is a wood frame house, green in color with white trim. The house has a front porch facing Blanding Blvd. Directly in front of the location to be searched is a mailbox with the numbers 5738 painted on the mailbox.

*Shedd*, 358 So. 2d at 1118. The house searched was located at 6573 Blanding Boulevard, was a concrete block house rather than a wood frame, and had a front porch facing a different direction. *Id.* Furthermore, there was actually a house with the address 5738 Blanding Boulevard, located about 1.1 miles away from the correct premises, which was green with white trim and faced Blanding Boulevard. *Id.* Under these circumstances, it was very likely that, without the help of the officer who had previously conducted surveillance, the executing officers "would have searched an incorrect residence." *Id.*

In contrast, the errors in the warrant description in this case are more akin to the minor discrepancies in *Smith* and *Carr*. We hold that, where a warrant contains these types of inaccuracies, the independent knowledge of an officer who previously surveilled the premises can be considered in determining whether the warrant description was sufficiently particular.

For the foregoing reasons, we affirm the conviction and sentence.

WARNER, STEVENSON and GERBER, JJ., concur.

\*       \*       \*

6