[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12602
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cr-00217-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HIPOLITO MARTINEZ-MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(June 28, 2019)

Before TJOFLAT, JORDAN, and BRANCH, Circuit Judges.

PER CURIAM:

Hipolito Martinez-Martinez challenges the search warrant that led to his arrest and conviction for possession of a firearm by an alien illegally in the United States, 18 U.S.C. § 922(g)(5)(A).[1] He argues that there was no probable cause to search his home, that the warrant was insufficiently particularized, and that the good-faith exception to the exclusionary rule does not apply. For the reasons that follow, we affirm the denial of his motion to suppress the firearm evidence seized under the warrant, and we affirm his conviction.

The events that led to the search of Martinez's home were as follows. Police in Garden City, Georgia, were investigating the August 19, 2017, murder of Eliud Montoya, a naturalized U.S. citizen who had been shot execution-style with a small-caliber bullet, possibly .22-caliber. One suspect was Pablo Rangel, Montoya's supervisor at work whom Montoya had recently reported for running an illegal alien employment scheme and skimming his employees' pay. In addition, Rangel's nephew and Montoya's co-worker Refugio Ramirez had been arrested in 2014 for illegally concealing a .22-caliber pistol. Rangel lived at 275 Milton Rahn Road in rural Rincon, Georgia, and Ramirez lived in a trailer on Rangel's property.

Detective Roberto Rodriguez applied for a search warrant. In his affidavit, he declared that "fruits of the crime d[o] exist inside the residence located at 275

---

[1] "It shall be unlawful for any person . . . who, being an alien . . . is illegally or unlawfully in the United States . . . to possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(5)(A).

2

Milton Rahn Road." The warrant was approved by the local magistrate, authorizing

a search of:

> 275 Milton Rahn Road, Rincon Georgia, 31326. The residence and property can be reached by traveling on Rahn Station Road from Highway 21 for 2 miles making a left onto Milton Rahn Road and traveling 1.2 miles and the residence (tan in color) will be located on the left following by the mobile home (gray in color). See Exhibit A and B [Satellite photographs of the land]
>
> Property is owned by Pablo Rangel. Property is listed with having 26.65 acres. Land has multiple dwellings that can not be accessed without driving on a private drive that dead ends on this land. Residence has a newer structure identified as a modular home, as well as multiple trailers as follows. Gray in color mobile home with white trim located at the far end the driveway. Light colored pull behind camper located in the rear of the gray mobile home. Tan in color residence with wooden porch on the back located before reaching the gray mobile home. There are currently 8-10 vehicles on the property.

Executing the warrant, police searched several residences and vehicles on the

property, including the "gray in color" mobile home in which Martinez lived. In

total, they found a variety of weapons and ammunition, some of which were .22-

caliber. From Martinez's home they seized a 12-gauge shotgun.

Martinez was indicted on one count of possession of a firearm by an alien

illegally in the United States. He moved to suppress the gun on the grounds that

there was no probable cause to search his personal trailer, that the warrant lacked

particularity, and that the good-faith exception to the exclusionary rule did not

apply. The magistrate judge conducted a hearing in which Detective Rodriguez and

Special Agent Anthony Miranda of Homeland Security Investigations (the

3

investigative arm of U.S. Immigration and Customs Enforcement) testified about how they obtained and executed the search warrant. The magistrate judge then recommended denying the motion to suppress. Martinez filed objections but then decided to plead guilty conditionally. The district court denied the motion to suppress, adopting the report and recommendation of the magistrate judge. The court accepted Martinez's conditional guilty plea, which reserved his right to appeal the denial of the motion to suppress. It sentenced Martinez to 24 months of imprisonment followed by 3 years of supervised release.[2]

We review the denial of a motion to suppress under a mixed standard of review. *United States v. Jiminez*, 224 F.3d 1243, 1247 (11th Cir. 2000). We review the district court's findings of fact for clear error and its application of law to those

---

[2] Following the search of the Rangel property, Pablo Rangel, Juan Rangel-Rubio, and Jhonatan Rangel were also convicted of possession of a firearm by an alien illegally in the United States. Judgment, *United States v. Pablo Rangel-Rubio*, No. 4:18-cr-00064-WTM-GRS (S.D. Ga. July 10, 2018); Judgment, *United States v. Juan Rangel-Rubio*, No. 4:17-cr-00219-LGW-GRS (S.D. Ga. May 23, 2018); Judgment, *United States v. Jhonatan Rangel*, No. 4:17-cr-00218-WTM-GRS (S.D. Ga. Apr. 16, 2018).

Pablo and Juan Rangel have since been indicted, along with alleged triggerman Higinio Perez-Bravo, on federal charges of conspiracy to commit murder-for-hire and other counts related to Montoya's killing and the alleged illegal alien employment scheme. Indictment, *United States v. Rangel-Rubio*, No. 4:18-cr-00274-LGW-JEG (S.D. Ga. Dec. 7, 2018). The government has not yet decided whether to seek the death penalty.

Relatedly, Montoya's estate has filed a civil RICO action against Montoya's employer, its parent company, Pablo Rangel, and other employees of the companies. Complaint, *Huffman v. Davey Tree Expert Co.*, No. 4:18-cv-00184-WTM-JEG (S.D. Ga. Aug. 2, 2018). One of those employees pleaded guilty to conspiring to harbor illegal aliens. Change of Plea, *United States v. Cruz*, No. 4:18-cr-00267-WTM-JEG (S.D. Ga. Dec. 6, 2018). A state tort suit filed by Montoya's widow against these civil defendants is also pending. Complaint, *Hernandez v. Davey Tree Expert Co.*, No. STCV17-01873 (Chatham Cty. State Ct. Nov. 9, 2017).

4

facts de novo. *Id.* We review whether an affidavit established probable cause de novo, but we "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 1248 (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). We consider each of Martinez's arguments about the search warrant in turn.

First, Martinez argues that the search warrant was invalid because it lacked the particularity required by the Fourth Amendment. We disagree. The Fourth Amendment[3] requires "limiting the authorization to search to the specific areas and things for which there is probable cause to search," *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), and this warrant did so. It listed the dwellings on the Rangel property—including Martinez's—with clear physical descriptions that would enable the searchers "with reasonable effort [to] ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). As relevant here, it clearly identified Martinez's "[g]ray in color mobile home with white trim located at the far end of the driveway."[4] Although the warrant may have incorrectly

---

[3] "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[4] We express no opinion about the particularity of the warrant regarding the "8–10 vehicles on the property." But any lack of particularity in that respect is not fatal to the warrant's particular authorization to search Martinez's home.

5

identified the address of the mobile home, the particularity standard "does not necessitate technical perfection." *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011). "The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority. An erroneous description of premises to be searched does not necessarily render a warrant invalid." *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986) (upholding the validity of a warrant that misstated the address of the premises to be searched). And, as we next explain, the warrant's imprecision with respect to street addresses was reasonable in light of Detective Rodriguez's investigation and did not prevent a reasonable person searching for the property from finding it.

Second, Martinez argues that the police lacked probable cause to search his trailer, which bears the address of 135 Milton Rahn Road. He asserts that Detective Rodriguez's declaration that "fruits of the crime d[o] exist inside the residence located at 275 Milton Rahn Road" established probable cause to search only Pablo Rangel's personal residence at that address and not any of the other residences located on his property as described in the affidavit and warrant. But in view of the entire affidavit, which the local magistrate credited, as well as Detective Rodriguez's testimony, which the district court credited, we agree with the district

6

court that the affidavit established probable cause to search all of the dwellings it described on the Rangel property.

Probable cause means that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The record supports the conclusion that Rodriguez reasonably believed that evidence of Montoya's murder could exist in any structure on the Rangel property. The affidavit clearly established that both Rangel and Ramirez were suspected in the murder, that both men lived on the Rangel property, and that Ramirez owned a .22-caliber pistol. The record further reflects that Detective Rodriguez did not know which dwellings belonged to Rangel and Ramirez in particular. He had obtained a description of the entire property from the internet and local law enforcement but was warned that, if he drove on to the property in a preliminary attempt to narrow the investigation, he would be seen, and evidence might be destroyed. He suspected that the murder weapon could easily be hidden in any of the structures or vehicles on Rangel's property.[5] Presented with this evidence, there was a "substantial basis" for the local magistrate to conclude that probable cause existed, *id*. at 238–39: that there was a fair probability that evidence

---

[5] The execution of the search warrant also supports Detective Rodriguez's view of the arrangement of the Rangel property. When police arrived, Martinez's mobile home was the first place they searched after securing the people who were on the property, because Rangel was arrested nearest to it. The police did not initially see its "135" marking because they entered from its back side, thinking it was the front. And they found a piece of mail addressed to 275 Milton Rahn Road inside Martinez's home.

of a crime, such as the murder weapon, would be found somewhere on the entire Rangel property. The district court's assessment that it was not unreasonable to infer that Rangel "exercised full control over that secluded 26-acre property" was not clearly erroneous in view of the entire record.

Martinez relies on *Maryland v. Garrison* as if its facts provide an urban analogue to the rural setting here. In *Garrison*, Baltimore police obtained a warrant to search a suspect and his home, "the premises known as 2036 Park Avenue third floor apartment." 480 U.S. at 80. When they executed the warrant, they discovered that this address actually described two third-floor apartments. They found contraband in the wrong apartment before realizing their mistake. *Id.* The Supreme Court explained that "if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue," they would not have been entitled to include the wrong apartment in the search warrant. *Id.* at 85. But the Court nonetheless upheld the search and seizure because the warrant was valid when it was issued, based on the information available to the officers when they obtained the warrant. *Id.* at 85–86.

The difference between *Garrison* and the present facts is that the record here establishes that the warrant did not mistakenly include a "wrong" residence. Detective Rodriguez testified that he intended all along to search the "multiple trailers and multiple campers" on the property. Although it turned out that the

mailing address of Martinez's grey mobile home was 135 Milton Rahn Road, not 275 Milton Rahn Road, Rodriguez reasonably believed based on his investigation that 275 Milton Rahn Road was the address for the entire 26 acres, including both Rangel's and Ramirez's personal homes. For example, a co-worker of Montoya's told Rodriguez that Rangel lived on a large property referred to as a farm, and county deputies told him about shots-fired complaints from neighbors that referred to the entire multi-trailer property as 275 Milton Rahn Road. Moreover, the detailed description of the property in the affidavit and warrant identifies Rangel only as the owner of the entire property and describes multiple dwellings without identifying one in particular as Rangel's personal home. Therefore, even if it were unclear from the address Rodriguez gave that he intended to search each of the dwellings on the property, including the mobile home actually at 135 Milton Rahn Road, his physical description clarified that his declaration applied to each dwelling. *See Burke*, 784 F.2d at 1092 ("The search warrant contained a detailed physical description of the building, minimizing the possibility that an apartment in any building other than the correct one would be searched."). In light of the "due weight" we give to the judgment of "resident judges and local law enforcement officers," *Jiminez*, 224 F.3d at 1248, we do not find the address ambiguities here to be fatal to the probable cause determination of the local magistrate.

9

Finally, Martinez argues that the good-faith exception to the exclusionary rule, which ordinarily allows the admission of evidence obtained by police officers acting in reasonable reliance upon a search warrant later found to be unsupported by probable cause, does not apply here because it utterly lacked indicia of probable cause to search Martinez's home. *See generally United States v. Leon*, 468 U.S. 897, 922 (1984). Because we find that the warrant was sufficiently particularized and was supported by probable cause, we need not reach this issue. However, we find in the alternative that the good-faith exception applies. Asking "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," *id.*, we see nothing in the record that would so indicate. There is no evidence that Detective Rodriguez intentionally misled the magistrate or that the magistrate failed to act neutrally. We further find, in light of our previous discussions, that the affidavit possesses reasonable indicia of probable cause and that the warrant is not so deficient in particularity that it could not reasonably be presumed to be valid. *Cf. id.* at 923 (describing these four situations where the good-faith exception would not apply).

Martinez's motion to suppress was properly denied, and we therefore affirm his conviction.

**AFFIRMED.**

10