[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 381 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 382 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 383 
The appellant, John Deavie Roberson, was convicted of unlawful possession of marijuana in the first degree, a violation of §13A-12-213(a)(2), Ala. Code 1975. He was sentenced to 10 years' imprisonment. Roberson represented himself at trial,[1] and he represents himself on appeal.
 I.
First, Roberson contends that the evidence was insufficient to support his conviction. Roberson did not move for a judgment of acquittal at the close of the State's case or at the close of all the evidence. Although Roberson filed a motion for a new trial, he did not allege in that motion that the evidence was insufficient to support his conviction; rather, he made several allegations regarding various errors he believed occurred during his trial, and he alleged that the verdict was "contrary to law" and "contrary to the weight of the evidence." (C. 308.)
In Reed v. State, 717 So.2d 862 (Ala.Crim.App. 1997), this Court held that the appellant's motion for a new trial alleging that the verdicts were inconsistent, that they were contrary to the evidence, and that they were contrary to the law was not sufficiently specific to preserve for review the appellant's argument that the evidence was insufficient to sustain his convictions. This Court stated that "[a] `scattergun' approach in a motion for a new trial `does not squarely present to the trial court the issue of the sufficiency of the evidence; consequently, it is insufficient to preserve the issue for appellate review.'" Reed, 717 So.2d at 864, quoting Johnson v. State, 500 So.2d 69, 72
(Ala.Crim.App. 1986). Similarly, Roberson's motion for a new trial was not sufficiently specific to preserve for review his challenge to the sufficiency of the evidence.
Moreover, even if Roberson had preserved for review the issue of the sufficiency of the evidence, we would decide it adversely to him. "`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballengerv. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Fairclothv. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State,697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O'Neal v. State,602 So.2d 462, 464 (Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, *Page 385 
and in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston,358 So.2d 1040, 1042 (Ala. 1978).
The State's evidence indicated that on May 10, 1995, law-enforcement officers obtained a search warrant for a mobile home on premises owned by Roberson's family. The mobile home was believed to be occupied by Roberson. When the officers arrived on the premises to execute the warrant on May 11, 1995, they secured everyone on the premises, including Roberson and an unidentified female, who were not in the mobile home, but in a "travel trailer" next to the mobile home.[2] While they were securing Roberson, officers saw marijuana in plain view in the travel trailer. When Roberson asked to be allowed to get something out of his vehicle, officers saw a cellular telephone and a large amount of cash in the vehicle. The officers then obtained two additional search warrants for the travel trailer and for the vehicle. The officers seized marijuana in both the trailer and the vehicle. The State also presented evidence indicating that Roberson had previously been convicted of possession of marijuana in the second degree (for personal use). This evidence was clearly sufficient to sustain Roberson's conviction for unlawful possession of marijuana in the first degree.
 II.
Roberson contends that the search warrants were deficient and that, therefore, the marijuana seized as a result of the execution of those warrants should not have been admitted into evidence. Although it is not entirely clear, as best we can discern, Roberson argues (1) that the initial search warrant for the mobile home was deficient because, he says, it was based on the hearsay of a confidential informant whose reliability was not established; (2) that the initial search warrant for the mobile home was deficient because, he says, the affidavit submitted in support of the warrant failed to aver when the confidential informant saw the narcotics at Roberson's residence; (3) that the search warrant for the travel trailer was deficient because, he says, it did not describe with sufficient particularity the place to be searched; and (4) that there was a fatal variance between the affidavit submitted in support of the search warrant for the travel trailer and the search warrant itself.
Before trial, Roberson filed what he styled as a "Motion for Pre-Trial Determination of Admissibility of Evidence" — which the trial court treated as a motion to suppress — in which he requested that all the evidence seized as a result of the three search warrants be suppressed. As grounds for the motion, Roberson alleged that "the warrant" — he did not identify which warrant — did not sufficiently describe the place to be searched and was, therefore, overbroad (C. 103), and that the officers searched the travel trailer pursuant to the initial search warrant by mistake and then later obtained the search warrant for that trailer to cover up their mistake. The trial court held a hearing on the motion and then denied it.
Roberson's claims 1, 2, and 4, as set out above, were not preserved for review. Roberson did not include these claims in his pretrial motion to suppress. *Page 386 
"`The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'" Culp v. State, 710 So.2d 1357, 1359 (Ala.Crim.App. 1996), quoting Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987). In addition, although it appears that Roberson raised these claims in his motion for a new trial, he did not object to the admission of the marijuana evidence at the time it was introduced. "Objections to the admission of evidence must be made when the evidence is offered, along with specific grounds to allow the trial court to rule." Craig v.State, 616 So.2d 364, 366 (Ala.Crim.App. 1992). "'[A] motion for a new trial or a motion for a judgment of acquittal is not sufficient to preserve the issue where no timely objection was made at the time the evidence was offered and admitted.'" Greenhill v. State, 746 So.2d 1064,1068-69 (Ala.Crim.App. 1999), quoting Newsome v. State, 570 So.2d 703,717 (Ala.Crim.App. 1989) (citations omitted in Newsome).
As to Roberson's claim that the warrant for the search of the travel trailer did not sufficiently describe the place to be searched, we find this claim to be meritless. From our review of the testimony at the suppression hearing and of the search warrants, it appears that the initial search warrant was for the mobile home located on the southernmost portion of the premises behind the two houses; this mobile home was described at the suppression hearing as being bluish-gray with red trim. Both the affidavit and the search warrant for the mobile home described it as the "southernmost" mobile home located on property on the east side of Highway 201 approximately 0.9 miles north of the intersection of Highway 201 and Highway 93. The second search warrant — for the travel trailer — read, in part:
 "Proof having this day been made before me, William G. Hightower, District Judge of Pike County, Alabama, that there is presently located in a residence occupied by John D. Robinson, aka John D. Roberson, and on its premises, including a Sentry safe at the end of a path leading from the residence, said residence being located on the east side of Alabama Highway 201 0.9 miles north of the intersection of Highway 201 and Alabama Highway 93 and being a white Concord travel trailer, the northernmost mobile home behind a blue-gray house and a red house on Highway 201 in Pike County, Alabama, controlled substances, namely, marijuana,
 "You are commanded in the daytime or the nighttime within ten days to make immediate search of a residence occupied by John D. Robinson, aka John D. Roberson, and its premises, including a Sentry safe at the end of a path leading from the residence, said residence located on the east side of Alabama Highway 201 0.9 miles north of the intersection of Highway 201 and Alabama Highway 93 and being a white Concord travel trailer, the southernmost mobile home behind a blue gray house and a red house on Highway 201 in Pike County, Alabama, for controlled substances and if you find the same or any part thereof, to bring it forthwith before me at my office at Troy, Alabama."
(C. 17.)
 "`A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority. *Page 387 
An erroneous description of premises to be searched does not necessarily render a warrant invalid. The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may "`with reasonable effort ascertain and identify the place intended.'" United States v. Weinstein, 762 F.2d 1522, 1532 (11th Cir. 1985) (citations omitted).' United States v. Burke, 784 F.2d 1090, 1092 (11th Cir. 1986), cert. denied, 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987
(1986).
 "The test for determining the sufficiency of the description of the place to be searched is set out in Lyons v. Robinson, 783 F.2d 737, 738 (8th Cir. 1985):
 "`The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched. United States v. Gitcho, 601 F.2d 369, 371 (8th Cir.) (citations omitted), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Thus, where a search warrant contain[s] information that particularly identified the place to be searched, [many courts have] found the description to be sufficient even though it listed the wrong address. United States v. McCain, 677 F.2d 657, 660-61 (8th Cir. 1982).'"
Helton v. State, 549 So.2d 589, 590 (Ala.Crim.App. 1989). See also Statev. Spivey, 675 So.2d 1335 (Ala.Crim.App. 1994), and Grantham v. State,580 So.2d 53 (Ala.Crim.App. 1991).
In this case, the warrant described the place to be searched "with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort." Although the warrant described the place to be searched first as the northernmost mobile home on the premises and then the southernmost mobile home on the premises, this inconsistency did not render the warrant deficient. After executing the first warrant at the southernmost mobile home on the premises and then discovering Roberson in the travel trailer — the northernmost mobile home on the premises — there is no doubt that the executing officers knew exactly which trailer the second search warrant applied to. Therefore, we find no error on the trial court's part in denying Roberson's motion to suppress.
 III.
Roberson contends that he was denied discovery when, he says, the State failed to comply with the trial court's discovery order. Specifically, he argues that the State did not provide him with a videotape of the premises that was made on the day the search warrants were executed and that was played for the jury during trial. Although it is not entirely clear, Roberson appears to contend that the State's alleged failure to provide him with the videotape before trial "raise[s] questions of the videotape's origins." (Roberson's brief at p. 20.)
The record reflects that, before trial, the trial court issued a discovery order that stated, in part:
"IT IS HEREBY ORDERED:
 "1. The District Attorney or his representative shall produce or make available to the Defendant/Defendant's attorney the following:
". . . .
 "(f). All physical evidence or documentary evidence which the Prosecution will offer into evidence in its case in *Page 388 
chief, including any search warrant and search affidavits upon which the Prosecution will rely on in its case in chief."
(C. 87.)
Rule 16.5, Ala.R.Crim.P., provides:
 "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; may grant a continuance if requested by the aggrieved party; may prohibit the party from introducing evidence not disclosed; or may enter such other order as the court deems just under the circumstances. The court may specify the time, place, and manner of making the discovery and inspection and may prescribe such terms and conditions as are just."
The record reflects that, just before trial commenced, the trial court asked the prosecutor if there was any evidence the State was planning to introduce that had not been provided to Roberson through discovery. The prosecutor responded that she had provided full discovery to Roberson. Roberson then stated that he had not received discovery in the present case, case no. CC-95-166, but only in other cases pending against him. The prosecutor stated, however, that the materials produced during discovery were for the present case. Roberson did not object to the alleged lack of discovery at that time, nor did he object to the introduction of the videotape at trial. In Pettway v. State, 607 So.2d 325
(Ala.Crim.App. 1992), this Court stated:
 "Rule 16[, Ala.R.Crim.P.,] does not exist in a vacuum; it is subject to the general principle that objections must be made in a timely fashion. . . .
 "A trial court should be informed of a party's failure to comply with discovery procedures as soon as the aggrieved party is aware of the non-compliance. At a minimum, the aggrieved party must object to the undisclosed evidence at the time that evidence is offered and must state the specific grounds for the objection, i.e., that the offending party failed to comply with the discovery order or some other aspect of Rule 16. See Roberson v. State, 595 So.2d 1310, 1316 (Miss. 1992); State v. Moore, 731 S.W.2d 351, 353
(Mo.App. 1987). The requirement of a timely objection simply gives the trial court the opportunity to take corrective action where such action is warranted, see State v. Willis, 438 So.2d 605, 613 (La.App. 1983), and is in keeping with standard trial procedure and evidentiary rules."
607 So.2d at 331. Because Roberson did not object to the admission of the videotape or to the State's alleged failure to comply with the trial court's discovery order, this issue was not preserved for review.
 IV.
Roberson contends that he was denied the effective assistance of counsel. The record reflects that although Roberson represented himself at the trial, before trial — specifically, at the pretrial suppression hearing — he was represented by counsel. Roberson argues that his counsel was ineffective at the suppression hearing because, he says, (1) counsel did not argue to the trial court that the search warrants did not describe with particularity the places to be searched and that, therefore, they were too broad even though he had included that claim in the motion to suppress; (2) counsel did not call witnesses to testify; (3) counsel did not inform him of the suppression hearing and, therefore, he was not present at the hearing; and (4) counsel *Page 389 
was not, in fact, representing him, but "injected himself into the appellant's case" without any court order appointing him.
The record reflects that the four specific claims of ineffective assistance of counsel Roberson presents on appeal were not included in his motion for a new trial. Although Roberson included in his motion for a new trial the general allegation that he "was denied a fair trial because, at his Pre-Trial Hearings on the admissibility of the illegally seized evidence, he was denied effective assistance of counsel, otherwise silent from appellate review" (C. 316), this general allegation was not sufficient to preserve the specific allegations for review.
In Ex parte Jefferson, 749 So.2d 406 (Ala. 1999), the Alabama Supreme Court created an exception to the preservation requirement when a defendant asserts a claim alleging ineffective assistance of counsel. The Court held that a general claim of ineffective assistance of counsel may be sufficient to preserve for appellate review a more specific claim of ineffective assistance of counsel "[w]here the record on appeal reflects that trial counsel's performance was so deficient as to fall below an objective standard of reasonableness." 749 So.2d at 408. In Montgomeryv. State, 781 So.2d 1007 (Ala.Crim.App. 2000), this Court recognized that the exception carved out by the Alabama Supreme Court in Jefferson would be applicable in "only a minute number of cases" — those cases where counsel's error is "so blatant and clear on the face of the record that there [is] no room for interpretation." 781 So.2d at 1011. We held in Montgomery that we would "not stretch to find ineffective assistance of counsel in cases where the claim has not been addressed by the trial court," and that if the record on appeal does not reflect on its face
that counsel's performance was so deficient as to fall below an objective standard of reasonableness, the preservation exception carved out inJefferson would not apply. Id.
In this case, we find that Roberson's four claims of ineffective assistance of counsel, which were not presented to the trial court in his motion for a new trial, do not fall within the preservation exception ofJefferson. The record does not reflect, on its face, that counsel's performance at the suppression hearing was so deficient as to fall below an objective standard of reasonableness.[3] Therefore, those claims are not properly preserved for review. See, e.g., Flowers v. State,799 So.2d 966 (Ala.Crim.App. 1999); and Montgomery, supra.
 V.
Roberson contends that the trial court erred in not granting his request for a continuance and in not affording him an opportunity to prepare a defense. Specifically, Roberson argues that he was not given sufficient time before trial to review the records and files associated with his case and that he arrived "just minutes before the trial commenced." (Roberson's brief at p. 27.)
The record reflects that Roberson initially proceeded to trial without objection. However, during his opening statement, Roberson told the jury that when he arrived at the courthouse that morning, he was "under the impression that this here was going to be a hearing. I was brought here thinking that it was not to be a jury *Page 390 
trial until I got here today." (R. 30.) In addition, at the conclusion of the State's case-in-chief, the following occurred:
 "THE COURT: . . . Mr. Roberson, do you have any evidence you wish to present?
 "[Roberson]: Your Honor, which I have talked with you this morning,[4] it's virtually impossible for me to stand here and try to defend myself when I don't have none of my witnesses.
"THE COURT: Well, now, Mr. Roberson —
 "[Roberson]: I'm asking for an extension of a couple of days for some time to get my witnesses here for the trial today.
 "THE COURT: Now, Mr. Roberson, you stated on the record earlier that you didn't realize you were coming to court today for a jury trial?
"[Roberson]: Yes, sir.
 "THE COURT: Let's see. Here on June 7th of this year, I entered an order, and a copy of it was sent to you. The order reads, `The Court, having reviewed the legal file in this proceeding, hereby orders that the trial of this case is scheduled for the 9th day of July, which is today, 2001, 9:00 a.m. All parties and/or attorneys of record are ordered to appear for said trial.' That gave you more than a month's notice to be prepared and ordered you to be prepared today.
 "Between that time and now, I appointed an attorney to represent you, an attorney which you have refused. He was here this morning. He was ready to go to trial to represent you. Again on the record, you have refused that attorney and have chosen to go forward representing yourself.
 "So, do you have any evidence that you wish to present at this time?
 "[Roberson]: I can't defend myself. I don't have any witnesses.[5]
 "THE COURT: That is no fault of the Court. That is your decision.
 "[Roberson]: I asked for seven days in advance to this day here. That order was sent to you about three weeks ago.
 "THE COURT: You don't have any witnesses to call at this time?
 "[Roberson]: I can't subpoena witnesses. I didn't have enough time. I talked with you about that this morning that I would like to have my witnesses here for the hearing today.
 "THE COURT: Mr. Roberson, the Court disagrees. You have had time to subpoena witnesses. Do you have a witness to call at this time?
 "[Roberson]: Yes, I have witnesses, but I don't have a subpoena list that I can subpoena my witnesses for the trial today.
"THE COURT: Go ahead and call your first witness.
 "[Roberson]: I thought this was going to be a hearing, not a jury trial today. That's why I wasn't prepared.
 "THE COURT: Mr. Roberson, go ahead and call your first witness.
"[Roberson]: I don't have any." *Page 391 
(R. 86-88.) At that point, the trial court instructed the prosecutor to begin closing arguments.
As can be seen from the above-quoted portion of the record, Roberson requested a continuance on the ground that he did not have adequate time before trial to subpoena his witnesses because, he said, he did not know that the trial was going to be held that day. On appeal, however, Roberson argues that he should have been given a continuance because he did not have adequate time "to review the files and records" associated with the case. Therefore, the specific argument Roberson makes on appeal was not preserved for review.
We note, however, that the record indicates that Roberson had ample time to prepare for his trial, to subpoena witnesses, and to review whatever files and records he wanted to review. The search giving rise to the present charge occurred on May 11, 1995; the case was tried on July 9, 2001. It appears from the record that, during the pretrial stages of the case, in 1995 and 1996, Roberson was represented by five different attorneys, one of whom was retained by Roberson. However, it appears from the record that Roberson elected to represent himself in March 1996 when he filed a pro se motion requesting that various family members and friends be appointed as "cocounsel." (C. 149-52.) Already imprisoned for 70 years on other charges, Roberson filed numerous pro se motions between 1996 and 2001. Three of those motions were filed between the June 7, 2001, order setting the trial date and the July 9, 2001, trial, and they showed, contrary to Roberson's claim at trial, that he knew the case was set for a jury trial on July 9, 2001. In one of the motions, a motion for discovery, dated June 19, 2001, and stamped as filed in the circuit clerk's office on June 21, 2001, Roberson specifically stated that he was requesting discovery "so as to allow adequate time for preparation for trial, set for July 9, 2001." (C. 294.) In another motion, requesting a court reporter to be present at all times during the trial, Roberson specifically said that "[t]he court has set the matter for trial for July 9, 2001." (C. 298.) Finally, Roberson filed a notice of intent regarding his defenses for trial. Moreover, the record reflects that, beginning in 1996, Roberson also filed four pro se motions requesting that a trial date be set and/or demanding a speedy trial — on October 18, 1996, February 17, 1999, July 13, 2000, and December 16, 2000. Furthermore, the record reflects that Roberson arrived at the courthouse for trial 1 hour and 50 minutes before jury selection began (R. 9), not "just minutes" before the trial as Roberson alleges.
 "`"A motion for a continuance due to a lack of time for adequate preparation is a matter entirely and exclusively within the sound discretion of the trial court and its ruling will not be reversed on appeal absent a [plain and palpable] showing of abuse." Reynolds v. State, 539 So.2d 428, 429 (Ala.Cr.App. 1988), cert. denied, 539 So.2d 428 (1989). . . . Moreover, "the reversal of a conviction because of the refusal of the trial judge to grant a continuance requires 'a positive demonstration of abuse of judicial discretion.' Clayton v. State, 45 Ala. App. 127, 129, 226 So.2d 671, 672 (1969)." Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), writ denied, 372 So.2d 44 (Ala. 1979).'"
Jackson v. State, 791 So.2d 979, 998 (Ala.Crim.App. 2000), quotingLoggins v. State, 771 So.2d 1070, 1084 (Ala.Crim.App. 1999), aff'd,771 So.2d 1093 (Ala. 2000) (emphasis added in Loggins).
Roberson has failed to show an abuse of discretion on the part of the trial court. The record indicates that Roberson knew a *Page 392 
month in advance the date the case was set for trial and that he had ample time to prepare his defense. Therefore, we find no error on the part of the trial court in denying Roberson a continuance.
 VI.
Roberson contends that he was prejudiced when the trial court forced him to appear in front of the jury in prison clothing.
The record reflects that the following occurred just before voir dire examination began, at approximately 10:50 a.m.:
 "THE COURT: Now, earlier I gave you time to go get some regular clothes to wear in this case.
 "[Roberson]: Your Honor, it's virtually impossible for me to come here today to select a jury, get clothes and do all this here in just a couple of hours. I have a motion on the record asking the Court to have me back in Pike County seven days in advance. That would have gave me enough time to get my clothes and everything that I needed. I have been locked up now for six years. Their clothes don't fit me. I need decent clothes for a jury. I'm just getting here today. I wasn't here last week.
 "THE COURT: So, it's your intention to proceed the way you are?
"[Roberson]: It looks like I don't have no rights.
 "THE COURT: You have rights. I have given you the opportunity since 9:00 this morning to get some regular street clothes here. No one has left the courthouse to go do that for you. You informed me earlier that you would just go forward as dressed.
"[Roberson]: I would have to."
(R. 8-9.) In addition, the record reflects that Roberson's brother, Homer Roberson, his sister, Minnie Wilson, and his brother-in-law, Jeffrey Baker, were all present in the courtroom and could have easily gotten him different clothing for trial. Instead, Roberson chose to proceed to trial in his prison clothing.
 "`[A]n accused "may not remain silent and willingly go to trial in prison garb and thereafter claim error." Hernandez [v. Beto, 443 F.2d 634,] 637 [(5th Cir.), cert. denied, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971)]. The accused must take any and all precautionary steps to eliminate any possible prejudice in order to later complain of prejudice.' Turner v. State, 473 So.2d 639, 641 (Ala.Cr.App. 1985). Also, the accused is required to show that he was, in fact, compelled to wear the prison garb. Id."
Perry v. State, 741 So.2d 467, 470 (Ala.Crim.App. 1999). "[T]he element of compulsion is crucial in deciding whether an accused is deprived of due process when tried in identifiable prison clothing." Turner v.State, 473 So.2d 639, 640-41 (Ala.Crim.App. 1985).
In this case, Roberson was not compelled to appear before the jury in his prison clothes; rather, he was given an opportunity to obtain street clothes for trial, and he refused to avail himself of that opportunity. Clearly, he did not take any and all precautionary steps to eliminate any possible prejudice. Therefore, he cannot now complain that he was prejudiced by his appearance in prison clothing.
 VII.
Roberson next contends that the record on appeal is not complete. His entire argument in this regard is as follows:
 "Appellant filed motion in the trial court for correction and supplementation of the record on appeal. (Supplemental record 1-4), October 18, 2001, the trial *Page 393 
court failed to respond to appellant's timely and proper motion. Appellant filed at least five (5) motions in the Court of Criminal Appeals for the correction of the record on appeal timely and in the proper manner, pursuant to Rule 10(g), Alabama Rules of Criminal Procedure."
(Roberson's brief at p. 28.)
Despite Roberson's meager argument, we note that, as Roberson concedes in his brief by actually citing to the supplemental record, a supplemental record was, in fact, filed with this Court in response to Roberson's motion to supplement. Roberson's motion to supplement the record was granted; there is nothing for this Court to review as to this claim.
 VIII.
Roberson next contends that Pike County was not the proper venue for this case. Specifically, his argument is as follows:
 "The court erred whereat [sic]; it is without jurisdiction or the proper venue in Pike County to hear Case Number CC-95-166. Said case was transferred to Coffee County, Alabama by order of Circuit Judge Thomas E. Head, November 20, 1995, Pursuant to Rule 10.1, Alabama Rules of Criminal Procedure, (C-114-115). That Rule 10.2(a) provides:
 "`A defendant loses the rights granted under Rule 10.1 by allowing a proceeding to commence or to continue without objection after becoming aware of grounds for change of place of trial.'
 "This matter was change place of trial to Coffee County, by order of the court (C-114-115), according to the Rule; appellant lost the right when the matter commenced December 4, 1995. Appellant's Coffee County jury heard the case, or reviewed the evidence during trial December 1995; without objection."
(Roberson's brief at p. 28.) Roberson did not present this claim to the trial court; therefore, it was not preserved for review. See, e.g.,Reynolds v. State, 615 So.2d 94 (Ala.Crim.App. 1992) (holding that an argument as to venue is waived if no objection is raised in the trial court).
Moreover, even if this issue had been preserved for review, we would decide it adversely to Roberson. The record reflects that, in addition to being indicted for unlawful possession of marijuana in the present case, case no. CC-95-166, Roberson was also indicted for seven counts of unlawful distribution of a controlled substance, case nos. CC-95-167 through CC-95-173. On November 20, 1995, Roberson filed a motion for a change of venue for the distribution cases, specifically listing only those case numbers, case nos. CC-95-167 through CC-95-173, in the motion. The trial court granted the motion, but mistakenly stated in its order transferring the cases to Coffee County "[t]hat said motion extends to Case No. CC-96-166, although said case is not enumerated in the caption." (C. 114.) Roberson went to trial in Coffee County on the distribution charges and was convicted, but trial on the possession charge was postponed. (R. Supp. 20; C. 120.) On January 5, 1996, the Coffee Circuit Court entered an order transferring case no. CC-95-166 back to Pike County pursuant to Roberson's oral request at his sentencing hearing for the distribution cases. (C. 121.) Therefore, contrary to Roberson's contention, case no. CC-95-166 was properly tried in Pike County.
 IX.
Finally, Roberson contends that he was denied a speedy trial as a result of the six-year *Page 394 
delay between the indictment and the trial.
In Barker v. Wingo, 407 U.S. 514 (1972), the United States Supreme Court held that when determining whether an accused has been denied his right to a speedy trial, a court must look at: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant's case.
The length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant — whichever is earlier — to the date of the trial. See, e.g., Mansel v. State, 716 So.2d 234
(Ala.Crim.App. 1997). To trigger a speedy-trial analysis, the delay must be so excessive as to be "presumptively prejudicial." Barker,407 U.S. at 530. Unless the delay is presumptively prejudicial, there is no need to inquire into the other Barker factors. In this case, the delay from Roberson's arrest on May 11, 1995, to the first day of his trial on July 9, 2001, was approximately 74 months. This was presumptively prejudicial and requires inquiry into the remaining Barker factors. See, e.g., Parrisv. State, [Ms. CR-00-0406, August 31, 2001] ___ So.2d ___ (Ala.Crim.App. 2001) (40-month delay was presumptively prejudicial).
Although the record does not show the reasons for all of the delays, it does reflect that many of the delays were caused by Roberson. As noted previously, Roberson was represented by five different attorneys during the pendency of the proceedings, all of whom withdrew from representing Roberson due to Roberson's unwillingness to cooperate and/or his dissatisfaction with their representation. After Roberson elected to represent himself, he flooded the court with pro se motions, and various members of his family also purported to file motions on his behalf. One of Roberson's motions involved allegations of judicial and prosecutorial misconduct and resulted in all of the judges in Pike County recusing themselves; a judge from another county had to be appointed to handle the case. As the State correctly points out in its brief to this Court, it took time for the new judge to familiarize himself with the case and to rule on Roberson's numerous pro se motions. As noted previously, the case was, at one point, mistakenly transferred to another county and then, two months later, transferred back to Pike County. Moreover, the record reflects that the State filed only one request for a continuance throughout the pendency of the proceedings and that request was filed in the district court, before Roberson had even been indicted.
"To prevail on a speedy trial claim[, t]he accused must show purposeful and deliberate delay by the prosecuting authority." Pierson v. State,677 So.2d 830, 831 (Ala.Crim.App. 1996). "`"Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test ofBarker."'" Zumbado v. State, 615 So.2d 1223, 1234 (Ala.Crim.App. 1993), quoting McCallum v. State, 407 So.2d 865, 868 (Ala.Crim.App. 1981), quoting in turn Walker v. State, 386 So.2d 762, 763 (Ala.Crim.App.), rev'd in part and vacated in part, 860 F.2d 1091 (11th Cir. 1988). Roberson has not even alleged, much less shown, that the delay was purposeful and deliberate on the part of the prosecutor. In fact, the record shows that virtually none of the six-year delay was attributable to the State, but that the majority of the delay was due to Roberson's own actions.
As to the assertion of his right to a speedy trial, Roberson asserted his right four times, beginning in October of 1996. *Page 395 
"Repeated requests for a speedy trial weigh heavily in favor of an accused." Kelley v. State, 568 So.2d 405, 410 (Ala.Crim.App. 1990).
Finally, as to the prejudice prong, although Roberson argues that he "was prejudiced by the delay," he has failed to show how he was prejudiced. "Barker set out three interests that the right to speedy trial was intended to protect and by which the level of prejudice is to be measured: (1) `to prevent oppressive pretrial incarceration'; (2) `to minimize anxiety and concern of the accused'; and (3) `to limit the possibility that the defense will be impaired.'" Kimbrell v. State,659 So.2d 1039, 1041 (Ala.Crim.App. 1995), quoting Barker,407 U.S. at 532. Because Roberson was incarcerated for his distribution convictions for the majority of the six-year delay, any pretrial incarceration cannot be considered prejudicial. See id. Moreover, Roberson has failed to allege, much less show, that his defense was impaired by the delay or that he suffered any anxiety or concern as a result of the delay.
After considering and weighing the four Barker factors, we conclude that Roberson was not denied his right to a speedy trial.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB and WISE, JJ., concur. BASCHAB, J., dissents, without opinion.
[1] The record reflects that the trial court found Roberson to be indigent and appointed counsel to represent him. Roberson was represented by counsel during the pretrial stages of the case. However, Roberson eventually elected to represent himself. After this election, the trial court repeatedly informed Roberson that he had the right to counsel and reminded him that an attorney would be appointed to represent him, should he change his mind. Just before trial began, the trial court again advised Roberson to accept an appointed attorney, but Roberson refused. (R. 4-8.) Roberson indicated to the trial court that he understood his right to counsel, that he had proceeded pro se in two previous trials, and that he wanted to proceed pro se in this trial. After reviewing the record, we conclude that Roberson knowingly and voluntarily waived his right to counsel. See, e.g., Tomlin v. State, 601 So.2d 124 (Ala. 1991).
[2] There were two houses and three mobile homes or travel trailers on the premises.
[3] In fact, the record affirmatively refutes two of Roberson's claims. The transcript of the suppression hearing shows that, contrary to Roberson's contention on appeal, he was present at the hearing. In addition, the record shows that Roberson's counsel at the hearing, Malcolm Newman, was actually retained by Roberson, in direct contradiction with Roberson's allegation on appeal that Newman was not actually representing him.
[4] There is nothing in the record indicating that Roberson spoke with the trial court about witnesses before the trial began.
[5] The record does not support Roberson's assertion that he had no witnesses present. The record reflects that before the trial began, the trial court listed several names of people who were in the courtroom and asked the parties if either were going to call those people as witnesses. Roberson indicated that he was going to call one of those people as a witness on his behalf; the court then invoked the rule and excluded that witness from the courtroom.